1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SOUND MIND AND BODY, INC., *et al.*,

Plaintiffs,

v.

CITY OF SEATTLE,

Defendant.

Case No.  C02-2139L

ORDER REGARDING
CROSS MOTIONS FOR
SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on a motion for summary judgment filed by defendant the City of Seattle (the "City") (Dkt. #23) and on plaintiffs' cross motion for summary judgment (Dkt. #24).  The City seeks to dismiss the remaining claim, for a violation of 42 U.S.C. § 1983, asserted by plaintiffs Sound Mind and Body, Inc. and SMB of Seattle, LLC.  Plaintiffs allege that the City deprived them of their right to equal protection by not requiring the Fremont Sunday Market to comply with all land use laws.

For the reasons set forth below, the Court grants the City's motion for summary judgment and denies plaintiffs' motion.

## II.  DISCUSSION

**A.**     **Background Facts.**

Plaintiffs filed this case in state court asserting claims for nuisance, violation of the state constitution, tortious interference, and a violation of 42 U.S.C. § 1983. Defendants removed the case to this Court on October 17, 2002.  Plaintiffs moved to remand the case.  On December 16, 2002, the Court granted the motion in part, declining to exercise supplemental jurisdiction over plaintiffs' state law claims, remanding them, and staying the § 1983 claim pending resolution of the state law claims.  King County Superior Court Judge Gregory Canova granted defendants' motion for summary judgment by order dated October 9, 2003; all of plaintiffs' state law claims were dismissed with prejudice.  The Court of Appeals for the State of Washington affirmed, the state supreme court denied the petition for review, and the case was mandated on June 17, 2005. Thereafter, the parties stipulated to lifting the stay in this Court and dismissing the non-city defendants.[1]

The Court adopts the statement of facts set forth in the opinion of the Court of Appeals for the State of Washington.  During the relevant time period, Sound Mind and Body, Inc. ("SMB") owned and operated three fitness clubs in Seattle.  One is located in Fremont on North 34th Street between Evanston Avenue North and Phinney Avenue North (the "Gym").  The Gym is open seven days a week, and is open from 9:00 a.m. to 7:00 p.m. on Sundays.  The land is owned by the Fremont Dock Company, which leases

---

[1] The non-city defendants were Jon and Candice Ann Hegeman, the Founders of the Fremont Sunday Market, and Interdyme, Inc.

the building to the Quadrant Corporation.  Quadrant Corporation leases the space to SMB of Seattle, LLC, which subleases the space to SMB to operate the Gym.

The Gym is one block from where the Fremont Sunday Market (the "Market") is held.  Since April 2002, the Market has occupied a one block area of North 34th Street bordered by Phinney Avenue North and Evanston Avenue North.  Access to the Gym's parking lot is not affected by the Market, as the lot does not have an access point on the block closed by the Market.

The Market operates on Sundays from 10:00 a.m. to 5:30 p.m., and typically draws over a hundred vendors selling their crafts, collectibles, and foodstuffs.  Before moving to the North 34th Street location, the operators of the Market applied for and obtained a special events permit from the City authorizing the closure of North 34th Street between Phinney Avenue North and Evanston Avenue North on certain Sundays.  Street use permits were issued thereafter, authorizing the closure of the street on that block for the Market.  Following long-standing City practice, the City believed that issuance of a street use permit for this type of temporary street use was categorically exempt under the City's ordinance pursuant to the Washington State Environmental Policy Act, RCW 43.21C ("SEPA").  Therefore, the City did not consider whether an environmental impact statement ("EIS") might be required.  The City also did not believe initially that a Master Use Permit ("MUP") was required.  However, when the City learned that a portion of the Market was being conducted on property in addition to the street, it notified the Market that a MUP was also required.

Plaintiffs allege that the City violated their right to equal protection by selectively

enforcing its land use laws by issuing the street use permits to the Market without SEPA review or a MUP decision.  In essence, plaintiffs are claiming that they were denied equal protection because they were required to comply with the land use laws, but the Market was not.  Plaintiffs seek to enjoin the City from granting permits to the Market until they complete a MUP and SEPA review.  The City argues that plaintiffs lack standing.  The City also argues that even if plaintiffs have standing, their § 1983 claim fails as a matter of law because plaintiffs cannot prove that they have been denied any federal right, that the City intended to discriminate against the class of "law abiding" citizens in its interpretation of the ordinance, that the City owed them a legal duty to correctly interpret its ordinances, or that the City discriminated in its interpretation of the law.

**B.    Summary Judgment Standard.**

On a motion for summary judgment, the Court must "view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact."  Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004).  All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied."  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

**C.    Standing and Merits of Plaintiffs' Claims.**

In their motion for summary judgment, the City argued that plaintiffs lacked standing because "they do not appear to be within the class of persons allegedly subject to

ORDER REGARDING CROSS
MOTIONS FOR SUMMARY JUDGMENT - 4

discrimination, i.e., landowners or developers who were required to comply with all applicable laws when they sought development permits." City's Motion at p. 7. In response, plaintiffs argue that they nevertheless have standing because they are vested with the rights of the fee owner during their lease term, and because they have standing to maintain an abatement action, challenge a SEPA determination, and to file a land use petition. However, plaintiffs are not bringing any of those actions. Plaintiffs have provided no evidence that they sought or obtained land use permits, or that they complied with all applicable laws in doing so. The declaration of the President of SMB and Chief Manager of SMB Seattle, LLC obliquely states, "Having become familiar with the expense and difficulty of obtaining land use permits and our need to provide dedicated parking as a condition of developing the parcel, I wondered how [the Market] could so quickly and easily obtain a land use permit without providing for dedicated parking."[2] Declaration of Richard Harrington (Dkt. #25) at ¶ 10. Plaintiffs' "familiarity" with permit difficulties does not mean that they were required to obtain them or that they did so. Moreover, plaintiffs do not claim that they were required to obtain a MUP or comply with the SEPA requirements, the regulations the City allegedly failed to enforce with the Market. Accordingly, because plaintiffs have not shown that they were within the class of persons allegedly subject to discrimination, they lack standing to bring their equal protection claim.

Even if plaintiffs had standing, their equal protection claim would fail on the

---

[2] Plaintiffs do not allege that the Market, which is a temporary user of a City block, should have been required to provide dedicated parking.

ORDER REGARDING CROSS
MOTIONS FOR SUMMARY JUDGMENT - 5

merits.  Plaintiffs allege that their rights were violated because the City deprived plaintiffs of a right to comment on, and potentially halt, the Market's land use.  If plaintiffs had that right, it flowed from the City's ordinances, not from any federal source.  Neither a violation of a state law nor a failure to enforce the laws is a violation of equal protection.[3]  Rather, as plaintiffs acknowledge, an equal protection challenge requires some evidence that similarly situated entities were treated differently.  See, e.g., Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir. 1995) (citing Attorney General v. Irish People, Inc., 684 F.2d 928, 946 (D.C. Cir. 1982) ("Discrimination cannot exist in a vacuum; it can be found only in the unequal treatment of people in similar circumstances")).

Although plaintiffs vaguely allege that the land use laws were selectively enforced against them, they have provided no evidence that similarly situated people were treated differently.  They have not shown that they were similarly situated to the Market.  In fact, they offer no evidence that they are subject to the same land use regulations for maintaining their permanent building that apply to the Market, whose land use is temporary and intermittent.  They have not shown that the City required any applicant for street use permits for the temporary, intermittent closure of a city street to complete a MUP or SEPA review.[4]  Furthermore, although plaintiffs allege that they were denied an

_____

[3] See, e.g., Muckway v. Craft, 789 F.2d 517, 523 (7th Cir. 1986) (explaining that the plaintiffs' "contention that the denial of their rights under the zoning ordinance violated their right to equal protection ignores the Supreme Court's instruction that the guarantee of equal protection of the laws is not a source of substantive rights").

[4] The fact that the state court found that the City erred in determining that those permits were not required is irrelevant.  A mistake is not a denial of equal protection.  See, e.g., Butz v. Economou, 438 U.S. 478, 507 (1978) ("Federal officials will not be

ORDER REGARDING CROSS
MOTIONS FOR SUMMARY JUDGMENT - 6

opportunity to challenge the Market's land use, they have not shown that any entity had that opportunity.  Without any evidence that similarly situated entities were treated differently, plaintiffs' equal protection claim fails as a matter of law.

Finally, an equal protection claim based on the unequal application of a law that is fair on its face requires some showing of "intentional or purposeful discrimination." Muckway, 789 F.2d at 522 (internal citation and quotation omitted; noting that "a discriminatory purpose is not presumed, there must be a showing of clear and intentional discrimination").  Plaintiffs have presented no evidence of a discriminatory motive. Furthermore, the state court found, in the context of ruling on plaintiffs' civil conspiracy claim, that there was no evidence that the City was issuing the street use permits to accomplish an unlawful purpose, "i.e. the continued operation of the Market in violation of land use law."  Court of Appeals Decision (Dkt. #23-2) at p. 13.  Plaintiffs now argue that the City's continued issuance of the street use permits after the Court of Appeals found that the wrong permits were issued is evidence of discrimination.  However, plaintiffs filed their equal protection claim long before the Court of Appeals issued its decision; the City's subsequent actions cannot supply the necessary evidence of discriminatory animus.  Moreover, after realizing that a MUP was required, the City sent a letter to the Market stating that it needed to submit a MUP application, met with Market staff to discuss permit requirements, and sent a permit "correction notice" to the Market. Declaration of Roque Deherrera (Dkt. #23-3) at ¶ 5.  Plaintiffs' contention that the City is

liable for mere mistakes in judgment, whether the mistake is one of fact or one of law").

1   enforcing the land use laws in a discriminatory manner is unsupported.

2

3                                    **III.  CONCLUSION**

4           For all of the foregoing reasons, the Court GRANTS the City's motion for

5   summary judgment (Dkt. #23) and DENIES plaintiffs' cross motion for summary

6

7   judgment (Dkt. #24).  The Clerk of the Court is directed to enter judgment in favor of the

8   City and against plaintiffs.

9

10          DATED this 21st day of February, 2006.

11

12

13                                        _MNT S Lasnik_

14                                        Robert S. Lasnik
                                          United States District Judge
15

16

17

18

19

20

21

22

23

24

25
    ORDER REGARDING CROSS
26  MOTIONS FOR SUMMARY JUDGMENT - 8